**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Jack ALDRIDGE et al., Defendants-Appellants.**

**Nos. 72-1022 to 72-1024.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1972.

Decided July 25, 1973.

Rehearings Denied Aug. 28 and Oct. 15, 1973.

James H. Voyles, Jr., T. Michael Smith, James Manahan, Terrence P. Pehler, Indianapolis, Ind., for defendants-appellants.

Stanley B. Miller, U. S. Atty., Indianapolis, Ind., Robert G. Clark, Crim.Div., Fraud Section, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, CAMPBELL,* Senior District Judge, and ESCHBACH,** District Judge.

WILLIAM J. CAMPBELL, Senior District Judge.

The three defendants-appellants were found guilty by a jury in the Southern District of Indiana on an indictment charging them and others with securities fraud (15 U.S.C. § 77q(a)) and mail fraud (18 U.S.C. § 1341). Fourteen counts of the original twenty-one count indictment were ultimately submitted to the jury. Defendants Perrault and Good were convicted on each count submitted to the jury; defendant Aldridge was convicted on the eight counts in which he was charged. Defendant Bagal, an attorney, and defendant Brown, an accountant, were acquitted on all counts pertaining to them. A co-defendant Calvin Mummert entered a plea of guilty during the course of the trial. Each of the three convicted defendants has filed a separate appeal which this court has ordered consolidated. We affirm the judgments of conviction as to each defendant.

As set forth in the indictment, the scheme to defraud may be briefly summarized. The several defendants in various combinations organized American National Trust on May 7, 1963 and controlled its operation until June 8, 1963. On that date defendants Aldridge, Mummert and Perrault became trustees, continuing in that capacity until 1965, 1966 and 1967 respectively. Under an agreement which predated the formation of the trust, defendants Aldridge and Good together with Mummert caused the trust to purchase a property owned by a company controlled by Aldridge, and divided the proceeds of the sale among themselves. A satellite corporation controlled by the defendant Good, American Trust Management, was utilized by the defendants to effect the sale of 7.5 million dollars in shares of American National Trust and an additional 7.5 million dollars in shares of Republic National Trust, which was organized by defendants Good and Perrault. Self-dealing in the management of these trusts was alleged in the indictment, including the purchase by American National Trust of two properties from American Trust Management for a total of $763,000.00 with a resulting profit to American Trust Management of $322,000.00, and the payment of $305,000.00 in real estate commissions to the defendant Good and to Midwest Trust Associates, a company controlled by Good.

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

** District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

Three central misstatements of material fact and three corresponding omissions to state facts necessary to make the statements made not misleading, were also charged in the indictment as follows:

1. A statement that investors in the Trusts would earn 8% on their investments, and the failure to state that the Trusts were suffering continuing operating losses;

2. The statement that the Trusts paid monthly distributions to investors out of earnings and the failure to state that the distributions were returns of capital.

3. The statement that an investor could obtain the return of his entire investment from the respective Trusts and the failure to state that the Trusts would redeem their shares only until the end of the initial offering period.

■ Each defendant challenges the sufficiency of the evidence against him. The evidence shows that the three convicted defendants were familiar with the sales presentations taught at the sales training sessions conducted by the trusts. The material misrepresentations outlined above were passed on to prospective salesmen during those training sessions. That the defendants were aware of the poor financial condition of the trusts is apparent from the fact that outside accountants' financial reports had been made available to them. The proof also indicated that the three defendants knew that the distributions were not being made from income, as represented, but were being made from capital. The defendants further knew that there was no intention to permit redemption of the trusts' certificates beyond the initial offering period. The self-dealings of defendants Aldridge and Good were known to all defendants, but no effort was made to inform prospective purchasers of these dealings. Summarized in the light most favorable to the government, this evidence reveals that the three defendants were the organizers and promoters of the two trusts involved in the indictment, that they participated fully and elaborately in all of their operations and that they were aware of the misrepresentations passed on to the public by their salesmen, and finally that they knew of the trusts' bad financial condition as well as their own self-dealings. The evidence was thus sufficient to support the convictions.

■ All three defendants also maintain that the testimony of co-defendant attorney Seymour Bagal violated their attorney-client privilege. As previously stated, attorney Bagal, who had represented the two trusts involved in the indictment, was also indicted in this case but was found not guilty by the jury. He testified regarding several conversations he had with the three defendants. Significantly, his testimony was offered as part of his own defense and was not placed in evidence as part of the government's case in chief.

A uniformly recognized exception to the privilege extends to communications made to an attorney in furtherance of a continuing or future fraud or crime. Petition of Sawyer, 229 F.2d 805 (7th Cir. 1956), cert. denied sub nom. Sawyer v. Barczak, 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486 (1956). The exception may be invoked where the communications are made in furtherance of acts contemplated by the client; the attorney need not have joined together with the client to commit the fraudulent or criminal acts and the attorney may be ignorant of them. See United States v. Clark, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933). At the time of Bagal's testimony here, the government had established a *prima facie* case that the defendants had been involved in both securities and mail frauds. Thus, the communications fall within the exception to the attorney-client privilege and were properly admissible into evidence.

■ It is further contended by the three defendants that the trial court improperly instructed the jury that codefendant Calvin Mummert had pleaded

guilty to fourteen counts of the indictment and that Mummert's plea was in no way evidence of guilt against the remaining defendants. Some nine days into a six week trial the defendant Mummert asked leave to change his plea of not guilty in order to enter a plea of guilty. The remaining defendants requested the court to inform the jury that Mummert was no longer a part of the case but asked that the guilty plea not be communicated to the jury. The defendants sought to have the jury instructed only that Mummert was no longer a part of the case and that they should not consider his departure as evidence against any of the defendants or as evidence against the position of the government. The government maintained that the unexplained departure of one of the defendants might be taken as inference against its position, and therefore requested the court to inform the jury of the plea of guilty but to instruct it not to infer anything adverse as to the guilt of the remaining defendants. The district judge elected to follow the latter course.

The instruction as given was approved by this court in substantially the same form in United States v. Kahn, 381 F.2d 824 (1967), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1969). It is true that in *Kahn* the plea of the co-defendant occurred near the beginning of the trial whereas here the plea was entered nine days into the trial. However, this court stated in *Kahn* that "without a convincing demonstration otherwise, it is to be presumed that clear and strong cautionary instructions are curative." United States v. Kahn, 381 F.2d 824, 838 (7th Cir. 1967). On the basis of *Kahn*, we hold that there was no error in the giving of this instruction.

■ The defendant Perrault next questions the sufficiency of the government's proof of venue as to six counts of the securities fraud charges and two counts of the mail fraud charges on which he was convicted. In this regard, the government's burden is to demonstrate venue by a preponderance of the evidence rather than beyond a reasonable doubt. Hill v. United States, 284 F.2d 754 (9th Cir. 1961), cert. denied, 365 U.S. 873, 81 S.Ct. 908, 5 L.Ed.2d 862 (1961). Either direct or circumstantial evidence may be employed to establish venue. United States v. Mendell, 447 F. 2d 639, 641 (7th Cir. 1971), cert. denied, 404 U.S. 991, 92 S.Ct. 535, 30 L.Ed.2d 542 (1971). Here the evidence revealed that it was the custom of the trusts at least until 1965 to mail directly from the home office wherever appropriate. The home office was located within the Southern District of Indiana. Share certificates were prepared in this office as early as 1963 and stock records were maintained there through 1966. This supports an inference that if share certificates were mailed to purchasers, they were mailed from the home office. Similarly, each accountant who testified stated that primary cash records and cancelled checks were maintained at the home office. This permits an inference that if a distribution check was mailed, it was mailed from the home office. We hold that the government's proof of venue was sufficient.

■ The defendant Perrault also contends that he was prejudiced by certain remarks made during the prosecutor's closing argument. It is claimed that these remarks amounted to impermissible comment on the defendant's failure to take the stand and testify. See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1964). First, Perrault argues that he was prejudiced when government counsel argued that, while the evidence showed Perrault received certain monies as trustee of the two trusts, "there was no evidence that he did not receive more." The argument was made in response to an argument offered by Perrault's counsel to the effect that Perrault had not been shown to have the intent to defraud since he was not shown to have profited from the self-dealings within the management of the trusts. In this context, the comment of government counsel was

not unfair since it dealt with the evidence in the record and not with Perrault's failure to testify. See United States v. Hepner, 410 F.2d 920, 935 (7th Cir. 1969).

Another comment of the prosecutor complained of by Perrault appears in the record as follows:

"He also signed the March, 1966, letter which came out stating the intent of the Trustee only to say, only to make redemption until the end of the period when the shares were sold. He would deny that, but his signature was on the letter saying that was the intent."

This argument was made in reference to letters signed by Perrault in which trust affairs and policies were misrepresented to the shareholders. It is not clear that the jury would construe this as a comment on Perrault's failure to testify. In any event, there was no repetition of the argument, and it was certainly not an argument manifestly intended to be or of a character that the jury naturally and necessarily understood it to be a comment on Perrault's failure to testify. See United States v. Lyon, 397 F.2d 505, 509 (7th Cir. 1968). A single, unrepeated comment of ambiguous nature, such as this, even if it is assumed to be a comment on the defendant's failure to testify, does not compel reversal where, as here, the government's case is strong. United States v. Lyon, *supra.*

The final contention of error raised by the defendant Perrault concerns the district judge's refusal to appoint an accountant for Perrault in order to determine the benefits paid to him by the trust. Funds for the payment of expert assistance are authorized by 18 U.S.C. § 3006A(e)(3), a portion of the Criminal Justice Act, which provided that such compensation was not to exceed three hundred dollars. The district judge indicated that he would permit the four defendants to aggregate the three hundred dollars and hire an expert with authority to pay him twelve hundred dollars, but that he had no authority to permit additional compensation. Perrault stated that the purpose for which he wished the assistance of an appointed accountant was to determine the exact amount of money he had received directly or indirectly from the trust. In this regard, there is no showing of a need for an accountant since other documentary evidence showed the amount of money Perrault received from the trust. Additionally, Perrault does not even claim that he was prejudiced by not being able to hire an accountant. This contention does not require a reversal.

The defendant Good maintains that the indictment is multiplicious since only one scheme was alleged in support of the several substantive counts; that the indictment is duplicitous in both the securities and mail fraud counts by its allegations that the statues involved were offended in more than one matter; that the indictment is duplicitous by reason of its failure to designate who were principals and who were aiders and abettors; that the mail fraud count failed to state an offense; and that the indictment failed to set forth a scheme to defraud. Each argument is without merit.

As to the mail fraud counts, it is settled that the gravamen of the offense is the use of the mails and that each such use of the mails constitutes a separate offense. United States v. Eskow, 422 F.2d 1060, 1064 (2nd Cir. 1970), cert. denied, 398 U.S. 959, 90 S. Ct. 2174, 26 L.Ed.2d 544 (1970). As to the securities fraud counts, this court in United States v. Amick, 439 F.2d 351, (7th Cir. 1971), cert. denied, 404 U.S. 823, 92 S.Ct. 47, 30 L.Ed.2d 51 (1971), rejected the view urged by the defendant Good that the indictment charged but a single offense on its face by virtue of charging a single scheme. Similarly, Good's contention that the securities fraud counts in the indictment are duplicitous for charging more than one way in which the defendant violated the statute was also considered and rejected in *Amick.* Nor is there merit in Good's contention that the indictment is duplicitous for failing to state who is charged as a principal and who is charged as an

aider and abettor. It is clear that an aider and abettor is properly charged as a principal. United States v. Tropiano, 418 F.2d 1069, 1083 (2nd Cir. 1969).

■ Lastly, the defendant Aldridge claims that the case as to him requires reversal because of a delay in returning the indictment. Aldridge makes no claim or showing of prejudice and, therefore, under United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed. 2d 468 (1971), the contention is without merit.

Accordingly, for the reasons set out above, the judgments of conviction are each affirmed.

Affirmed.