COURT OF APPEALS
DECISION
DATED AND FILED

January 22, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1359**

Cir. Ct. No. **2015CV474**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

MENN LAW FIRM, LTD,

PLAINTIFF-RESPONDENT,

V.

LINDA VEERKAMP,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: GREGORY B. GILL, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Linda Veerkamp, pro se, appeals a judgment requiring her to pay her former attorneys, Menn Law Firm, LTD, $44,000 in

attorney fees and $5395.39 in costs. Veerkamp contends the circuit court erred by granting Menn Law Firm's motion for a declaratory judgment regarding its entitlement to attorney fees and costs. We reject Veerkamp's arguments and affirm.

## BACKGROUND

¶2 Veerkamp believed her brother, Donald Veerkamp, had unduly influenced their mother, Rita Veerkamp, to modify her estate planning documents in order to exclude Veerkamp as a beneficiary. On April 19, 2012, Veerkamp executed a written representation agreement with Menn Law Firm.[1] The agreement stated Veerkamp had engaged Menn Law Firm to: (1) "[c]ommence and litigate lawsuit vs. Donald Veerkamp re: Rita Veerkamp Trust"; and (2) provide "all representation needed in Rita Veerkamp Estate or with Rita Veerkamp Trust." The agreement further provided that Veerkamp would pay Menn Law Firm an hourly rate for its legal services and would reimburse it for all out-of-pocket expenses.

---

[1] The appellate record contains a three-page representation agreement dated April 19, 2012. In her brief-in-chief on appeal, Veerkamp asserts that she "signed a one-page hourly agreement," and Menn Law Firm then "created a three-page hourly agreement and forged [her] name to" it. However, the record citation Veerkamp provides for this assertion does not support it. We have no duty to scour the record to review arguments unaccompanied by adequate record citations. *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.

We further note that the "Statement of Case and Facts" in Veerkamp's brief-in-chief does not contain any citations to the appellate record, in violation of WIS. STAT. RULE 809.19(1)(d) (2017-18). We caution Veerkamp that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2) (2017-18).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶3 On April 25, 2012, Menn Law Firm filed a lawsuit against Donald on Veerkamp's behalf (Outagamie County case No. 2012CV588). It is undisputed that after filing that lawsuit, Menn Law Firm expended significant time and incurred costs in prosecuting Veerkamp's undue influence claim against Donald.

¶4 On August 7, 2012, Douglas Hahn, an attorney from Menn Law Firm, sent Veerkamp a letter with an enclosed bill for $24,793.37. Hahn informed Veerkamp that after applying a previous payment of $6000, she owed Menn Law Firm a balance of $18,793.37. Hahn also referred to a prior correspondence, which had "talked about the choice of having us handle this case on a contingency or an hourly fee." He continued:

> You had indicated that because you believed this case was close to settling you wanted to leave it on the hourly basis for the time being. [A decision by the circuit court] on August 6th makes it unlikely that a settlement will occur in the near future.
>
> We need to decide at this time if you want to convert the hourly fee to a one-third contingency fee. If we do, we will want payment for one-third of the time already spent, as reflected on this August 7th billing, or $7,435. In addition, we will want payment of all of our out-of-pocket expenses to date ($2,489.37), plus a $2,500 advance for future out-of-pocket expenses. Thus we will need total payment of $12,424.37. Since you already paid us $6,000, we will need an additional $6,424.37 in the immediate future.
>
> If we are successful in the lawsuit, our attorney's fees will then be one-third of the amount recovered. We will subtract from that the $7,435 which we have already received.

¶5 Hahn's letter also informed Veerkamp that Donald's lawyer was demanding she repay over $150,000 in loans that she had received from Rita. Hahn stated that the computation of Menn Law Firm's legal fees would be "more complicated" if Donald sued Veerkamp to recover that amount. He then inquired:

> Do you want us to defend you on that allegation? If so, if we do that on a one-third contingency fee, that means if these are determined to be gifts instead of loans (so you do not have to repay Don), our fee will wind up being about $55,600 for that work. Or do you want us to defend that on an hourly basis? Because the cases are so intermixed, that seems very difficult to do. Therefore, we need to have a discussion by telephone about this.

¶6      On March 27, 2013, Veerkamp entered into a contingency fee agreement with Menn Law Firm. The agreement stated Menn Law Firm would be entitled to one-third of the "gross amount recovered, either by settlement or suit, and before deduction of advanced costs and disbursements." The agreement also stated that Veerkamp was responsible for all costs incurred by Menn Law Firm "regardless of whether any recoveries are obtained." In addition, the agreement provided that Veerkamp's previous payment to Menn Law Firm of $6000 would be credited against any legal fees she owed under the contingency fee agreement. The agreement expressly stated that it "superseded" the parties' previous hourly fee agreement.

¶7      In describing the scope of the representation, the contingency fee agreement stated:

> I, Linda Veerkamp, hereby retain Menn Law Firm … and give it the exclusive right to prosecute my claim for injuries and/or damages and/or inheritance against Donald Veerkamp/Rita Veerkamp Trust/Rita Veerkamp Estate, and any other responsible parties as a result of Death of Rita Veerkamp [and] the provisions in her estate planning documents and Don Veerkamp's undue influence of Rita – Outagamie County Case 12CV588 ("this event").

The agreement further stated that Veerkamp agreed to employ Menn Law Firm "to handle all matters connected with the recovery of the damages resulting from this event, and to commence whatever actions are necessary to recover these damages."

¶8      On July 1, 2013, Donald, acting as personal representative of Rita's estate, filed a lawsuit against Veerkamp seeking to recover the money Rita had loaned to her (Outagamie County case No. 2013CV764). That case was consolidated with Veerkamp's undue influence lawsuit against Donald. Following a bench trial, the circuit court found that Donald had not unduly influenced Rita and that Veerkamp was not entitled to any distributions from Rita's estate or trust. Nevertheless, based on Rita's decision to disinherit Veerkamp, the court concluded Rita did not expect Veerkamp to repay any of the money Rita had loaned to her. Accordingly, the court found that Veerkamp did not need to repay the $150,000 in loans that she had received from Rita.

¶9      After the circuit court issued its decision in case Nos. 2012CV588 and 2013CV764, Menn Law Firm asked Veerkamp to pay it $50,000 for its legal services—i.e., one-third of the amount of debt the circuit court had determined Veerkamp did not need to repay. Menn Law Firm also demanded that Veerkamp reimburse it for $7890.31 in litigation costs. Veerkamp refused to pay, asserting she did not owe Menn Law Firm any amount under the contingency fee agreement because she "did not win any money" in the consolidated cases.

¶10     Menn Law Firm then filed the instant lawsuit against Veerkamp, asserting she had breached the contingency fee agreement by failing to pay Menn Law Firm $50,000 for its legal services and by refusing to reimburse it for the litigation costs it had incurred. In the alternative, Menn Law Firm sought rescission of the contingency fee agreement and reinstatement of the parties' original hourly fee agreement. As a third alternative, Menn Law Firm asserted an unjust enrichment claim and asked the circuit court to award it the reasonable value of the legal services it had performed on Veerkamp's behalf. In addition, Menn Law Firm asked the court to "[d]eclare the rights and obligations of the

parties under both the Hourly and Contingency Agreements insofar as Menn's right to compensation is concerned."

¶11   At a pretrial conference on October 20, 2016, counsel for Menn Law Firm informed the circuit court that efforts to settle the case had not been successful, and he suggested that the court "convert this into a declaratory action" and permit the parties to "just brief the matter" rather than holding a trial.  The court asked Veerkamp's attorney whether he would agree to that procedure, and he responded in the affirmative.  Veerkamp's attorney subsequently filed a motion to withdraw, which the court granted on November 18, 2016.

¶12   Menn Law Firm ultimately filed a motion for a declaratory judgment in June 2017.  It asked the circuit court to declare that it was entitled to recover $52,368 in attorney fees under the hourly fee agreement and $7890.31 in costs under either the hourly fee agreement or the contingency fee agreement.  Menn Law Firm filed two affidavits with attached documents in support of its motion.  Veerkamp filed a four-page, pro se "Answer to Plaintiff[']s Petition for a Declaratory Judgment" in November 2017.  She did not submit any affidavits or evidence in support of that filing.

¶13   After reviewing the parties' submissions, the circuit court issued an oral ruling on Menn Law Firm's declaratory judgment motion on May 30, 2018.  Treating the motion as one for summary judgment, the court concluded the undisputed facts established that the contingency fee agreement was "the proper agreement under which to determine [the parties'] rights."  The court further concluded that under the contingency fee agreement, Menn Law Firm was entitled to one-third of the amount of Veerkamp's debt that had been forgiven in the consolidated cases.  Accordingly, the court ordered Veerkamp to pay Menn Law

Firm $44,000—i.e., one-third of $150,000, minus the $6000 payment Veerkamp had already made. The court also ordered Veerkamp to pay "any costs incurred subsequent to the signing of the contingency fee agreement." The court later entered a written judgment awarding Menn Law Firm $44,000 in legal fees and $5395.39 in costs, and Veerkamp now appeals.

## DISCUSSION

### I.     Declaratory judgment

¶14     Veerkamp argues the circuit court erred by granting Menn Law Firm's declaratory judgment motion. The grant or denial of a declaratory judgment is addressed to the circuit court's discretion. *Olson v. Farrar*, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1. In this case, however, the court treated Menn Law Firm's declaratory judgment motion as a motion for summary judgment. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."[2] WIS. STAT. § 802.08(2).

¶15     Veerkamp argues the circuit court erred by determining that she owed Menn Law Firm any amount of legal fees under the contingency fee agreement. She contends the plain wording of that agreement provides that Menn Law Firm would recover fees for its legal services only if it successfully prosecuted her undue influence claim against Donald. She argues the agreement does not entitle Menn Law Firm to recover legal fees based on the forgiveness of her obligation to repay $150,000 in loans to Rita's estate.

¶16     Like the circuit court, we conclude the contingency fee agreement applies to the $150,000 in loan forgiveness that Menn Law Firm obtained on Veerkamp's behalf. The agreement initially states that Veerkamp retained Menn Law Firm "to prosecute [her] claim for injuries and/or damages and/or inheritance against Donald Veerkamp/Rita Veerkamp Trust/Rita Veerkamp Estate, and any other responsible parties as a result of Death of Rita Veerkamp [and] the provisions in her estate planning documents and Don Veerkamp's undue influence of Rita … ('this event')." This language refers specifically to the prosecution of Veerkamp's undue influence claim. The agreement later states, however, that

---

[2] A court must be presented with a justiciable controversy before it may exercise its jurisdiction over a declaratory judgment claim. *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶28, 309 Wis. 2d 365, 749 N.W.2d 211. Four factors must be present in order for a controversy to be deemed justiciable. *Id.*, ¶29. In the circuit court, Veerkamp conceded that the first two justiciability factors were satisfied, but she argued the third and fourth factors were not. On appeal, Veerkamp does not raise any argument regarding the four justiciability factors. She has therefore abandoned her argument that Menn Law Firm's declaratory judgment claim is not justiciable, and we will not address it further. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (stating an issue raised in the circuit court, but not raised on appeal, is deemed abandoned).

8

Veerkamp employed Menn Law Firm "to handle *all matters connected with* the recovery of the damages resulting from this event." (Emphasis added.)

¶17    The defense of the estate's lawsuit to recover the loans Rita made to Veerkamp was clearly a matter "connected with" the recovery of damages on Veerkamp's undue influence claim. The two lawsuits were consolidated for trial. The circuit court ultimately found that Donald had not unduly influenced Rita and that Veerkamp was not entitled to any distributions from Rita's estate or trust. The court also determined, however, that given Rita's decision to disinherit Veerkamp, Rita did not expect repayment of any money she had loaned to Veerkamp. The court's decision regarding the loans was therefore intertwined with its decision on the undue influence claim, and, as such, the claims were clearly "connected."

¶18    Moreover, had the circuit court found in Veerkamp's favor on the undue influence claim and concluded Veerkamp was required to repay the loans, the balance due on the loans would presumably have been offset against any damages awarded on the undue influence claim. As such, the defense of the estate's claim to recover the loans was plainly "connected with" Veerkamp's recovery of damages on the undue influence claim. Under the plain language of the contingency fee agreement, Menn Law Firm was therefore entitled to recover

one-third of the amount of debt forgiveness that it obtained on Veerkamp's behalf, minus the $6000 payment it had already received.[3]

¶19 In any event, even if we concluded the contingency fee agreement was ambiguous as to whether it applied to the estate's claim to recover Veerkamp's debt, we would then look to extrinsic evidence to resolve the ambiguity.[4] *See Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶36, 363 Wis. 2d 699, 866 N.W.2d 679. In support of its declaratory judgment motion, Menn Law Firm submitted attorney Hahn's August 7, 2012 letter, which expressly discussed how Menn Law Firm would be paid for its work defending Veerkamp against the estate's claim. Hahn explained, "[I]f we do that on a one-third contingency fee, that means if these are determined to be gifts instead of loans (so you do not have to repay Don), our fee will wind up being about $55,600 for that work." Hahn further explained it would be "very difficult" for Menn Law Firm to

---

[3] Veerkamp asserts the circuit court's decision to forgive the loans "was not based on Menn Law Firm's efforts." However, she provides no record citation in support of that assertion. Again, we need not consider arguments unaccompanied by adequate record citations. *See Roy*, 305 Wis. 2d 658, ¶10 n.1. Moreover, in her answer to Menn Law Firm's complaint, Veerkamp admitted that the court in the consolidated cases "*was persuaded by Menn's argument* that [Rita], in disinheriting Ms. Veerkamp, did not expect repayment of any sums loaned to Ms. Veerkamp." (Emphasis added.) Veerkamp's argument on appeal that the court's decision to forgive the loans was not based on Menn Law Firm's efforts is directly contrary to that earlier admission.

[4] Veerkamp argues that if the contingency fee agreement is ambiguous, we must construe it against the drafter—i.e., Menn Law Firm—instead of considering extrinsic evidence. However, our supreme court has stated that when the terms of a contract are ambiguous, "evidence extrinsic to the contract itself may be used to determine the parties' intent, *and any remaining ambiguities will be construed against the drafter*." *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶36, 363 Wis. 2d 699, 866 N.W.2d 679 (emphasis added). Stated differently, the rule that we construe an ambiguous contract against the drafter is a "default rule" that applies "only in the event of an unresolvable ambiguity—a tie—and only at the end of the process after extrinsic evidence has failed to clear up the question." *Roth v. City of Glendale*, 2000 WI 100, ¶51, 237 Wis. 2d 173, 614 N.W.2d 467 (Sykes, J., concurring). Here, because extrinsic evidence resolves any ambiguity regarding the parties' intent, we need not resort to construing the contingency fee agreement against Menn Law Firm.

defend against the estate's claim on an hourly basis because the two cases were so "intermixed."

¶20 Hahn's letter provides strong evidence that the contingency fee agreement Veerkamp later signed was intended to apply to Menn Law Firm's work in defending against the estate's claim to recover Veerkamp's debt. In response to Menn Law Firm's declaratory judgment motion, Veerkamp did not submit any evidence suggesting a contrary intent. The undisputed facts therefore establish that under the contingency fee agreement, Menn Law Firm was entitled to recover as its fee one-third of the amount of debt that was forgiven in the consolidated cases, less the $6000 payment it had already received.

¶21 Veerkamp also argues that the circuit court erred by awarding Menn Law Firm $5395.39 in costs. However, the contingency fee agreement expressly states that Veerkamp is "responsible for all costs advanced and/or incurred by [Menn Law Firm] in the prosecution of my claim regardless of whether any recoveries are obtained." After the court issued its oral ruling on Menn Law Firm's declaratory judgment motion, Menn Law Firm provided documentation supporting its request for $5395.39 in costs. On appeal, Veerkamp does not clearly explain why that amount is incorrect, or what amount of costs the court should have instead awarded. We need not address arguments that are not adequately explained or developed. *M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988).

## II. Veerkamp's other arguments

¶22 Veerkamp raises a number of other arguments on appeal, all of which we reject. Several of these arguments are entirely undeveloped. For instance, Veerkamp argues that the circuit court was biased against her and should

have recused itself. Relatedly, she asserts that the court erred by "guiding and favoring" Menn Law Firm "while refusing to answer her question and manipulat[ing] and confus[ing] her." Veerkamp does not, however, provide any record citations in support of these assertions. Moreover, she does not cite the legal standards regarding either judicial bias or recusal, nor does she explain why the facts of this case satisfy those standards. We need not address arguments that are undeveloped, unsupported by legal authority, or unsupported by citations to the appellate record. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992); *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.

¶23    Veerkamp also argues that the circuit court erred by permitting her attorney to withdraw "without holding a hearing to hear [her] side." Again, however, Veerkamp does not cite any legal authority supporting her claim that the court should have held a hearing before granting her attorney's motion to withdraw. We therefore decline to address this undeveloped argument. *See Pettit*, 171 Wis. 2d at 646-47.

¶24    Veerkamp next argues that the circuit court erred by failing to hold a jury trial regarding Menn Law Firm's entitlement to attorney fees and costs. This argument fails because Veerkamp's attorney agreed during the October 20, 2016 pretrial conference that the court could resolve the matter based on the parties' briefs without the need for a trial. "[U]nder agency law, ordinarily a litigant is bound by the acts of counsel during the representation." *Harold Sampson Children's Tr. v. Linda Gale Sampson 1979 Tr.*, 2004 WI 57, ¶36, 271 Wis. 2d 610, 679 N.W.2d 794. Veerkamp does not develop any argument that, under the facts of this case, she should not be bound by her attorney's agreement to resolve the matter without a trial. By virtue of that agreement, Veerkamp has waived her

12

right to argue on appeal that the court erred by failing to hold a jury trial on Menn Law Firm's claims.

¶25    Finally, Veerkamp argues that the circuit court erred by failing to rule on her motions for sanctions against Menn Law Firm. Veerkamp contends sanctions were warranted under WIS. STAT. § 802.05(2)(b) because Menn Law Firm "knew well before the complaint was filed that its claims were without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law." We have already concluded, however, that the court properly granted Menn Law Firm a declaratory judgment on its claim against Veerkamp for attorney fees and costs. Accordingly, Veerkamp was not entitled to sanctions under § 802.05(2)(b) because Menn Law Firm's claims did not lack a reasonable basis in law or equity. The court's failure to rule on Veerkamp's motions for sanctions was therefore harmless and provides no basis for reversal. *See* WIS. STAT. § 805.18.

        *By the Court.*—Judgment affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.